IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:24-cv-01403 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| DAVID B. RAUSCH, in his official ) | |
| capacity as Director of the Tennessee ) | |
| Bureau of Investigation, and ) | |
| JEFFERSON COUNTY, TENNESSEE, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM OPINION AND ORDER

Pending before the Court is "Plaintiff's Motion for a Preliminary Injunction" (Doc. No. 2, "Motion"), whereby Plaintiff asks the Court "to issue a preliminary injunction prohibiting Defendants from continuing to enforce Tennessee's Sex Offender and Violent Sex Offender Registration, Verification, and Tracking Act of 2004 ("SORVTA") (Tenn. Code Ann. § 40-39-201 et seq.) against Plaintiff." (*Id.* at 1). The Motion is supported by a memorandum of law (Doc. No. 3, "Plaintiff's Brief"). Defendants filed a response in opposition to the Motion (Doc. No. 19, "Response"), and Plaintiff did not file a reply.

The above quoted language from the Motion suggests unmistakably that Plaintiff seeks a preliminary injunction prohibiting the enforcement of *any* aspect of SORVTA against him, i.e., an injunction to the effect that *all* provisions of SORVTA go unenforced against him pending the outcome of this litigation. Plaintiff's Brief likewise suggests that this is what Plaintiff seeks at least primarily, but it contains an alternative request for an injunction at a minimum against SORVTA's "enforc[ement] of the in person reporting requirements, classification [of Plaintiff] as a 'violent

sexual offender" and "offender against children," and geographical restrictions, against him based on his 1991 conviction."  (Doc. No. 3 at 28).[1]

Tennessee's Adoption and Amendment of Sexual Offender Registration Statutes

Last year, the Sixth Circuit summarized Tennessee's adoption and amendment of Sexual Offender Registration Statutes as follows:

> Tennessee's first sex offender registration law, known as the Sexual Offender Registration and Monitoring Act ("SORMA") became effective January 1, 1995, and required individuals convicted of certain sexual offenses to register with the Tennessee Bureau of Investigation ("TBI") "within ten days of release without supervision from probation, parole, or incarceration," and to update essential information with the Bureau regularly thereafter. *See Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *2 (M.D. Tenn. Nov. 9, 2017). That law has been amended multiple times, was superseded by the current Act, and the current Act has been further amended. *See generally id*. Because our Ex Post Facto analysis necessarily involves a discussion of each amendment's substance and timing, a brief look at the statutory and procedural history is helpful.
>
> . . . .
>
> **1994**– SORMA was signed into law, effective January 1, 1995. The initial Act imposed basic reporting and registration requirements on most prior sexual offenders, including Plaintiffs. All information was kept confidential to the TBI, and reporting was done by mail.
>
> **1996**– SORMA amended to expand class of offenders to whom it applies.
>
> **1997**– SORMA further extended to cover offenders "who [ ] completed diversion and had their records expunged," or committed some non-sexual offenses against minors. It also "permitt[ed] TBI to require that registrants provide current photographs." *Id*.
>
> **2000**– Amended to impose mandatory 180-day sentence for falsification, to make registration life-long for certain extreme offenses, and to require offenders to report to the county where they live or go to school within 10 days of moving.

---

[1] The Court does not see from the docket where Plaintiff obtained, or even requested, leave to file a brief longer than 25 pages, as is required in this district. See LR7.01(a)(2). Plaintiff is admonished that in the future, such a failure to comply with the local rules well could prompt the Court to strike the noncompliant filing(s).

**2002**– Amended to require offenders working or studying at "institution[s] of higher learning" to report such work within 10 days and to make that information public for offenders convicted after October 27, 2002. *Id.*

**2003**– Amended, for the first time, to include restrictions on where offenders "could live, work, or travel." *Id.* The amendments prohibited registrants from living or working within 1000 feet of a school or childcare facility, or the home of their victim(s) or their family members, among other geographical restrictions.

**2004**– The General Assembly repealed SORMA and replaced it with the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act. This Act continues in force today. The Act largely continued the same classification system but also divided registrants into two classes—sexual offenders or violent sexual offenders—based on their offense of conviction. The new Act also dispensed with SORMA's reporting-by-mail scheme and required registrants to report and register in person to a designated law enforcement agency. Some changes allowed as little as 48 hours to report, and the Act increased the amount of information to be reported and imposed fees.

**2005**– Amended the new Act to increase the fees and add reportable information requirements.

**2006**– Prohibited registrants convicted of crimes against minors from living or working near schools and other children's facilities.

**2007**– Added more events reportable within 48 hours and made all registrants' information public, regardless of offense.

**2008**– Added more reportable information and disclosed some information—such as email addresses—to certain businesses. The amendments also prohibited registrants who offended against minors from dressing in certain costumes around minors.

**2009**– Excluded all registrants, regardless of offense, from schools, playgrounds, and other public facilities if the registrant has reason to believe that children are present, and prohibited registrants from "standing or sitting idly within 1,000 feet of such locations" without a legitimate reason. *Id.* at *3.

**2010**– Increased information required to be reported, required all registrants to carry a photo ID, and prohibited more than two registrants from living in the same house.

**2011**– Imposed reporting restrictions related to international travel and permitted libraries to ban registrants.

**2014**– Prohibited all registrants from living or working within 1,000 feet of a school or other children's facilities, authorized local authorities to notify residents when a registrant lives within an area, and imposed lifetime registration requirement on offenders whose victims were twelve years old or under.

**2015**– Expanded the information registrants were required to report and prohibited all registrants from "being alone with a minor in a 'private area.' " *Id*.

In summary, the current law does three things: First, it establishes reporting rules which require registrants to appear in-person quarterly at a local law enforcement agency and update information such as their residential address, vehicles, life details, and social security number. Second, it publishes this information—including identity, criminal history, physical traits, address, employer, driver's license number, vehicle license plates, etc.—for public use. Third and finally, it restricts Plaintiffs' geographical movement, particularly where they can live, work, and stay.

*Doe v. Lee* ["*Doe (2024)*"], 102 F.4th 330, 332–34 (6th Cir. 2024). It is worth noting that what the Sixth Circuit called "the Act," Plaintiff calls "SORVTA." The Court, though previously having referred to it as "SORA," *see, e.g.*, *Doe #11 v. Lee*, 609 F. Supp. 3d 578, 584 (M.D. Tenn. 2022),[2] herein will use Plaintiff's term for it.

The gist of Plaintiff's claim is that the application of SORVTA to him in particular is in violation of the Ex Post Facto Clause of the United States Constitution. This, according to Plaintiff, is because (a) the convictions that placed him within the scope of SORVTA occurred in 1991, before SORVTA (or indeed any Tennessee sex offender registration law) was enacted; (b) the Ex Post Facto Clause prohibits the imposition of retroactive "punishment"; and (c) SORVTA (or at the very least the particular provisions of SORVTA mentioned in the final sentence of the

---

[2] In *Doe #11*, the undersigned set forth his own summary of the enactment and amendment of these laws. 609 F. Supp.3d 586-589. Therein, the undersigned broke down into five categories what the Sixth Circuit has broken down into three categories. In the undersigned's view, both characterizations are reasonable, and any discrepancy between breaking down SORVTA's requirements into five categories and breaking them down into three categories is not material to the instant Motion. The undersigned notes that in *Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 11567-1170 (M.D. Tenn. 2021) he quoted a different (not to say *conflicting*) summary provided earlier by District Judge Waverly Crenshaw.

following paragraph) imposes "punishment" on him, and does so retroactively (i.e., based on his 1991 convictions). In his Complaint, Plaintiff requests that this Court "permanently enjoin Defendants from enforcing Tennessee's SORVTA restrictions against Plaintiff on the basis of his 1991 conviction." (Doc. No. 1 at 24).

Via the Motion, Plaintiff seeks to obtain preliminarily what he seeks via the Complaint to obtain permanently. That is, and as noted above, via the Motion Plaintiff primarily seeks an injunction preliminarily prohibiting the enforcement against him of *any* of SORVTA's provisions. And in the alternative, he seeks via the Motion an injunction against the enforcement against him of SORVTA's in-person reporting requirements, classification of him as a "violent sexual offender" and "offender against children," and geographical restrictions on him.

At the outset, the Court concludes that the Motion must be denied to the extent that it seeks preliminarily to enjoin the enforcement against Plaintiff of *any* part of SORVTA, i.e., seeks an injunction to the effect that *all* provisions of SORVTA go unenforced against him pending the outcome of this litigation. That is because the Sixth Circuit just last year made plain that SORVTA's registration, reporting, and surveillance components are properly considered not to impose punishment and thus are constitutionally sound. *Doe (2024)*, 102 F.4th at 339 (6th Cir. 2024) (quoting *Doe v. Bredesen*, 507 F.3d 998, 1005 (6th Cir. 2007), and *Smith v. Doe*, 538 U.S. 84, 90-91 (2003)). So, the Motion's request for a preliminary injunction as to the entirety of SORVTA must be denied due to Plaintiff's failure to meet the first requirement for a preliminary injunction, because under current law Plaintiff is not at all likely to succeed on the merits of such a request.

That leaves Plaintiff's alternative, narrower request to preliminarily enjoin the enforcement against him of SORVTA's in-person reporting requirements, classification of him as a "violent

sexual offender" and "offender against children," and geographical restrictions on him. This request is immediately revealed to be meritless in part. Specifically, it is meritless to the extent that it seeks to enjoin SORVTA's in-person reporting requirements. As just noted, *Doe (2024)* made clear that SORVTA's reporting requirements pass constitutional muster, and there is no reason to disbelieve that this is true specifically as to the aspect of SORVTA that requires *in-person* reporting in particular—in part because Plaintiff fails to explain what about an *in-person* reporting requirement is more punitive than a general (i.e., not necessarily in-person) reporting requirement. So, as for the specific request to enjoin SORVTA's in-person reporting requirements, Plaintiff fails to meet the first requirement for a preliminary injunction, because under current law it is not at all likely to succeed on the merits of such request.

So that leaves Plaintiff's request to preliminarily enjoin the provisions of SORVTA that classify him as a "violent sexual offender" and "offender against children" and place geographical restrictions on him.

STANDARDS AND PRINCIPLES CONCERNING PRELIMINARY INJUNCTIONS

Those seeking a preliminary injunction (or temporary restraining order, for that matter) must meet four requirements.[3] They must show a likelihood of success on the merits; irreparable

---

[3] Published Sixth Circuit case law stands unmistakably for the proposition that these four items are *factors* rather than *requirements,* except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a TRO alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g.*, *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). In other words, this case law stands for the proposition that the question is not whether all four of these things exist, but rather: (i) whether irreparable harm exists, and, if so, (ii) whether, considering the existence of irreparable harm and the extent to which the other three things exist, a preliminary injunction is warranted. Alas, this case law is inconsistent with at least some more recent Sixth Circuit and Supreme Court cases (including the two cases cited above) describing these as all being requirements. The Court believes that it should follow the latter line of cases, although it believes that the outcome likely would be the same in this case even if the Court were to take the opposite approach and treat these four items as merely factors (except insofar as irreparable harm is *first* a requirement and, if it exists, *then* a factor).

harm in the absence of the injunction; the balance of equities favors them; and that public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 403 (6th Cir. 2022).

"A preliminary injunction is an extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal quotation marks omitted). It is a remedy that should "be awarded [only] upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). *See also S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848–49 (6th Cir. 2017) (quoting *Munof* and *Winter*).

It is often stated that a district court has discretion to grant or deny preliminary injunctions. *See, e.g., Planet Aid v. City of St. Johns*, 782 F.3d 318, 323 (6th Cir. 2015). If that is the case, then it follows that the district court has the discretion to grant or deny a preliminary injunction even if the movant has shown (by satisfaction of the four requirements) that it is at least *eligible* for a preliminary injunction; otherwise, the district court's heralded discretion to deny a preliminary injunction would be illusory because it would have no discretion to deny a preliminary injunction to any movant that is eligible for one.[4]

"[T]he purpose [or at least the primary purpose] of a preliminary injunction is to preserve the status quo until a trial on the merits." *S. Glazer's Distributors of Ohio, LLC*, 860 F.3d at 848–49 (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). To be clear, it is not a *requirement* that a requested preliminary injunction preserve the status quo—hence the omission of any reference in the above-stated requirements to preserving the status quo—and a district court

---

[4] It only makes sense for the district court to have such discretion. After all, a preliminary injunction is an extraordinary remedy, one with a particular primary purpose (preserving the status quo). It stands to reason that a district court should have discretion in deciding whether—even if it can check the box on each of the four requirements— such an extraordinary remedy is unjustified by the circumstances as a whole and or would fail to preserve the status quo (and instead would change the status quo).

should not focus excessively on whether the requested preliminary injunction would preserve the status quo. But the Court believes that in exercising its discretion to decide whether to deny a request for a preliminary injunction, it can appropriately at least take into account the reality (where applicable) that the requested preliminary injunction would *change* rather *preserve* the status quo—and, relatedly, thereby treat the plaintiff (albeit only conditionally and temporarily) as if he or she had ultimately prevailed on his claims despite him or her not yet having done so.[5]

In order to obtain a preliminary injunction, there must be a defendant against whom the preliminary injunction would be appropriately enforceable. In other words, even if it ostensibly seems warranted to preliminarily enjoin *someone* (or something) from enforcing a provision of law (because the plaintiff can satisfy the four applicable requirements for a preliminary injunction), the movant still must show that the "someone" (or something) to be enjoined is a defendant in the case. In other words, as *Doe (2024)* strongly implied, an injunction against enforcement of a statutory provision—even if otherwise ostensibly appropriate—is appropriate only to the extent that it "enjoin[s] enforcement of the . . . statutory [provision] by entities [who are] tasked with its enforcement" and who are parties in the case. *Doe (2024)*, 102 F.4th at 341. So, in the instant case, as in *Doe (2024)*, an injunction can be granted against Defendant Rausch (who is sued in his capacity as Director of the Tennessee Bureau of Investigation) only to the extent that Plaintiff seeks to enjoin provisions of SORVTA that Defendant Rausch actually enforces as Director of the Tennessee Bureau of Investigation. That is, "Director Rausch is subject to suit and possible injunction regarding [only] those portions of Tennessee's statutes that come under his

---

[5] Ultimately, the Court denies the instant Motion due to Plaintiff's failure to show as required a likelihood of success on the merits. But the Court notes that it views the instant Motion as an attempt to change the status quo (whereby SORVTA *is* enforceable against Plaintiff), rather than preserve it, and this well could have factored in by the Court in exercising its discretion had it found that Plaintiff had satisfied all four requirements for a preliminary injunction.

responsibility or enforcement authority."[6] *Id.* at 336. The same is likewise true for Defendant Rausch's co-Defendant, Jefferson County.

ANALYSIS

Plaintiff starts out behind the metaphorical eight ball in seeking to establish that Defendant Rausch is subject to a potential injunction regarding the provisions of SORVTA that classify Plaintiff as a "violent sexual offender" and "offender against children," and geographical restrictions against Plaintiff. As the Sixth Circuit explained last year:

> According to Tennessee law, Director Rausch, the sole Defendant left in this case, is responsible for designing and issuing the forms which registrants use to report their information, Tenn. Code. Ann. § 40-39-205(a), creating and maintaining the registry database, *id.* § 40-39-206(a), disseminating that information to prosecutors and law enforcement, *id.* § 40-39-206(b), facilitating other agencies' entry of new data into the registry, *id.* § 40-39-204(a), and managing the repository of original registry forms, *id.* § 40-39-204(d). All of these functions fall squarely within the legitimate regulatory scheme which Tennessee is constitutionally allowed to provide and maintain. *See supra*, part II.B. The potentially unconstitutional portions—those provisions categorizing offenders and prohibiting them from living, working, and traveling within certain areas—are enforced by a diffusion of state officers and prosecutors which are not parties here. Based on the record before this court, we cannot say with finality that Director Rausch does not

---

[6] The principles set forth in this paragraph are considered matters of standing under Article III of the Constitution. Here, the Court will forgo as unnecessary a lengthy discussion of how the requirements of Article III standing (especially so-called traceability and redressability) result in the principle that ultimately matters on the instant Motion—which is that an official defendant can be enjoined as to enforcement of state statutes only to the extent that those statutes come under that defendant's responsibility or enforcement authority. But the Court credits Defendants' explanation of how this all relates to standing, including the following:

> Thus, "[a]lthough a district court may bind nonparties 'who are in active concert' with a defendant, that rule applies only when a plaintiff validly invokes federal jurisdiction by satisfying the traceability and redressability requirements of standing against a defendant." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) (en banc) (citation omitted) (quoting Fed. R. Civ. P. 65(d)(2)(C)). "If a plaintiff sues the wrong defendant, an order enjoining the correct official who has not been joined as a defendant cannot suddenly make the plaintiff's injury redressable." *Id.*

(Doc. No. 19 at 6). Relatedly and importantly, as noted below a movant that is not likely to establish standing in some particular respect is not likely to succeed on the merits as to claims requiring standing in that respect.

> enforce any unconstitutional provisions of the Tennessee Act, but the district court can make that determination on remand.
>
> The only injunction potentially warranted against Director Rausch would be a limited one prohibiting him from exercising his limited record-keeping powers under Tennessee law in a way that violates Plaintiffs' rights under our Ex Post Facto Clause analysis. Therefore, to the extent his office categorizes registrants based on the crime of their conviction and without an individualized assessment, that function may be questionable under *Snyder*. *See Snyder*, 834 F.3d at 705 ("A regulatory regime that ... categorizes [people] into tiers ostensibly corresponding to present dangerousness without any individualized assessment ... is something altogether different from and more troubling than Alaska's first-generation registry law."). But Director Rausch cannot be enjoined from enforcing provisions of the Act which he does not enforce—in fact, just to state the proposition highlights the circularity of such an injunction.**³**

*Doe (2024)*, 102 F.4th at 341. This language does not contemplate—and indeed precludes—an injunction against Defendant Rausch prohibiting him from enforcing SORVTA's geographic restrictions. That leaves just Plaintiff's request for an injunction as to SORVTA's provisions that classify Plaintiff as a "violent sexual offender" and "offender against children." The Sixth Circuit did say that "to the extent [Defendant Rausch's] office categorizes registrants based on the crime of their conviction and without an individualized assessment, that function may be questionable under [*Does #1-5 v. Snyder*, 834 F.3d 696 (2016)]."[7] *Doe (2024)*, 102 F.4th at 342.

At times, Plaintiff speaks as if the challenged classification is done by SORVTA itself, (Doc. No. 3 at 10, 28), i.e., that the classification is effected by the statute "based solely on the registrant's conviction offense," (Doc. No. 1 at ¶ 31(c)), without any action required on the part of Defendant Rausch. But Plaintiff does allege that "[r]elying upon the information in its central repository, the TBI classifies registrants into SORVTA's 'sexual,' 'sexual against children,' 'violent,' and 'violent against children' classification categories." (Doc. No. 1 at ¶ 68). And he

---

[7] *Snyder* has been a seminal case in this area as a whole, but it is not independently probative of any of the issues currently before the Court except to the extent that its holdings are incorporated into the more recent and more on-point case of *Doe (2024)*.

does complain about the manner in which TBI allegedly makes unilateral and potentially unsound classification decisions. And for their part, Defendants concede that Defendant Rausch "classifies offenders." (Doc. No. 19 at 6). So for purposes of the Motion, the Court concludes that an injunction against the enforcement against Plaintiff of SORVTA's classification provisions, if otherwise appropriate, would be warranted against Defendant Rausch in particular.

However, Plaintiff has failed to show that it is likely that an injunction against the enforcement against Plaintiff of SORVTA's classification provisions would be appropriate, and he therefore has failed to show that he is likely to succeed on a challenge to SORVTA's classification provisions. The failure here is a failure to show standing on that specific challenge[8]—a failure that relates not to Defendant Rausch specifically, but to Plaintiff more generally.

If a movant fails to show that that he or she is likely to establish standing, then he or she has failed to show that he or she is likely to succeed on the merits and is not entitled to a preliminary injunction. *See Waskul v. Washtenaw County Community Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018). To establish Article III standing, a plaintiff must show that (1) he or she has suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). Plaintiff does not say (and the Court does not currently see) why his classification as a violent sexual offender and an offender against children presents an injury that is concrete and actual, rather than

---

[8] Notably, Plaintiff needs to show his standing as to that specific challenge. This is because a plaintiff "must demonstrate standing for each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and must demonstrate standing separately "for each form of relief sought." *Id.* (quoting *Friends of the Earth*, Inc. *v. Laidlaw Envtl. Servs, Inc.*, 528 U.S.167, 185 (2000)). *See also Waksul* v. *Washtenaw Cnty. Cmty Mental Health*, 900 F.3d at 253 (quoting *DaimlerChryser Corp.*).

theoretical. It is already of public record that he has convictions for—i.e., has been, to use Plaintiff's phrase, (Doc. No. 3 at 3), "publicly branded" as someone who has committed—aggravated rape and aggravated sexual battery, and he does not dispute that (as Defendant asserts) his offenses were committed against a child. As Defendant points out (in making the different but conceptually related point that Plaintiff cannot show irreparable harm from Defendant Rausch's classification of him):

> Although Director Rausch has (lawfully) publicized Doe's conviction for violent sexual offenses against a child this conviction is part of "a criminal record, most of which is already public" anyway. *Smith*, 538 U.S. at 98. Doe has no right to suppress that record, and its accessibility on Tennessee's website "does not itself prohibit [him] from pursuing any vocation or avocation available to other members of the public." *Femedeer* [*v. Haun*, 227 F.3d 1244, 1253 (10th Cir. 2000)]; Doe therefore cannot connect any irreparable harm to anything Director Rausch has done or is doing. As a result, he cannot establish this "'indispensable' prerequisite to the granting of preliminary injunctive relief." Parents, 109 F.4th at 473 (quoting *D.T.*, 942 F.3d at 327).

(Doc. No. 19 at 14). The Court believes that this rationale applies likewise to the indispensable prerequisite of an injury-in-fact. That being the case, the Court starts out skeptical that Plaintiff can establish the injury-in-fact required to have standing to pursue an injunction against the enforcement of SORVTA's provisions whereby he is classified as a "violent sexual offender" and an "offender against children." There may be a way to demonstrate that this classification imposes a concrete and actual injury even considering that Plaintiff already has in effect been publicly identified as someone who has committed crimes that certainly are fairly deemed "violent" and "sexual" and appear undisputedly have been against a child or children. But Plaintiff has not demonstrated this.[9]

---

[9] Even if it had found that Plaintiff had standing with respect to the challenge to SORVTA's classification provisions, the Court in its discretion might have declined such a limited preliminary injunction (one directed solely at this one particular provision of SORVTA) due to a hesitation to slice and dice the enforcement of SORVTA too finely at the preliminary injunction stage.

That leaves Defendant Rausch's co-Defendant, Jefferson County.[10] It is conceivable that the requested permanent injunction could be justified as enjoining enforcement of provisions of SORVTA that come within Jefferson County's area of responsibility and enforcement authority. But Plaintiff does nothing at all to even attempt to establish that this is the case. Indeed, Plaintiff's Brief does not mention Jefferson County even once, except for in the case caption and the certificate of service. Thus, Plaintiff has failed to show that it is likely that he will succeed on the merits of a claim to permanently enjoin Jefferson County.[11] This is fatal to any claim Plaintiff would now make (which he actually has yet to make) that the requested preliminary injunction can be issued (in whole or in part) based on the presence in this case of Jefferson County as a Defendant.

CONCLUSION

With one exception, Plaintiff has failed to establish that either of the Defendants in this case would likely be properly subject to any aspect of any permanent injunction to which Plaintiff otherwise conceivably could be entitled. And although Defendant Rausch potentially could be subject to a permanent injunction as to one aspect of SORVTA, Plaintiff has failed to demonstrate that he is likely to have an injury-in-fact from the enforcement of that aspect of SORVTA. Therefore, he has failed to show that he is likely to obtain relief (against anyone) in this case. And therefore he has failed to show a likelihood of success on the merits in this case. Accordingly, the Motion (Doc. No. 2) is **DENIED.**

---

[10] In its Response, Defendants argued extensively (and persuasively) that injunctive relief was not warranted against Defendant Rausch in particular. They did not make the same kind of argument as to Defendant Jefferson County in particular, and indeed they mention Jefferson County only once below the case caption, perhaps because Plaintiff did not even mention Jefferson County in Plaintiff's Brief.

[11] The Complaint (which is not verified) does make allegations regarding Jefferson County's role in enforcing SORVTA. But mere allegations in the Complaint, unsupported by evidence or argument in support of a motion for a preliminary injunction, will not suffice to carry the movant's burden.

Although the Court has determined to Plaintiff has not at this time demonstrated a likelihood of success on the merits (especially with respect to the sole two Defendants named in this case), that by no means suggests that Plaintiff will not ultimately be entitled to relief in this case. The question is where to go from here in this case.

The judges of this Court agree that a final decision in *Does #1-8 v. William B. Lee, et al.*, Case No. 3:21-cv-00590, now pending before Judge Aleta A. Trauger, may inform the disposition of the many cases in this district that (like the instant case) are similar to that case. Therefore, in the interest of judicial economy, this case is or shall remain ADMINISTRATIVELY CLOSED pending final judgment in Does #1-8.

The unopposed "Motion for Extension of Time to File Responsive Pleading" (Doc. No. 18) is **GRANTED**. Because that motion contemplated an extension of 30 days to file a responsive pleading, Defendants' deadline to file a responsive pleading shall be **30 days after the case is reopened pursuant to the following paragraph**.

The Clerk of Court is DIRECTED to TERMINATE all pending motions (i.e., Doc. Nos. 14 and 17) without prejudice to refiling upon reopening of the case. No later than 28 days after the entry of final judgment in *Does #1-8*, including after appeal, the parties shall file a joint status report notifying the Court of any resolution of this case or, if this matter remains active, filing a joint proposed case management order addressing all litigation deadlines and including a statement by each party of how the final judgment in *Does #1-8* affects its position in this case. No party shall file any motion in this case before it is reopened except with leave of Court.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE